IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ELECTRO-MECHANICAL CORPORATION,<br><br>    Plaintiff,<br><br>    vs.<br><br>RITER ENGINEERING COMPANY and BYRON HOWELLS,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF/ COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE<br><br><br>Case No. 2:10-cv-975 TS |
| RITER ENGINEERING COMPANY,<br><br>    Counterclaimant,<br><br>    vs.<br><br>ELECTRO-MECHANICAL CORPORATION,<br><br>    Counterclaim Defendant. | |

    This matter is before the Court on Plaintiff/Counterclaim Defendant Electro-Mechanical Corporation's ("EMC") Motion to Dismiss for Improper Venue. For the reasons discussed below, the Court will deny the Motion to Dismiss.

1

## I. FACTUAL BACKGROUND

EMC brought this action against Defendants Riter Engineering Company (Riter) and Byron Howells (collectively "Defendants" and/or "Counterclaimants") on October 4, 2010. EMC's Complaint contains a claim for conversion against Defendants. In the Complaint, EMC alleges that, due to a computer error, it mistakenly sent three checks totaling $86,006.60 to Defendants during the months of March and April of 2010 and Defendants have refused to return the funds. On December 8, 2010, Defendants responded by filing a counterclaim with this Court, requesting a declaratory judgment against EMC and alleging a breach of the implied covenant of good faith and fair dealing.

Defendants' counterclaims arise out of a Sales Representative Agreement ("Agreement") entered into by EMC and Riter. The Agreement became effective August 22, 2007, and was terminated by EMC on October 18, 2009. Despite this termination date, EMC continued to pay past due commissions to Riter through at least January of 2010.

The Agreement contains both a choice of law provision and a forum selection clause. The Agreement states, in pertinent part:

> This agreement . . . shall be construed and enforced in accordance with and governed by the laws of the Commonwealth of Virginia. In the event of a dispute . . . either party may initiate litigation . . . [h]owever, any such litigation shall be initiated only in the Circuit Court for the City of Bristol, Virginia or in the U.S. District Court for the Western District of Virginia at Abingdon, Virginia. The parties specifically agree that no other courts shall have jurisdiction over any matter arising hereunder.[1]

EMC asserts that this Court does not have jurisdiction over Defendants' counterclaims because they arise under the Agreement and are subject to the forum selection clause and requests that this Court either dismiss Defendants' counterclaims or transfer them to the proper

---
[1] Docket No. 16 Ex. 1, at 4.

venue under the Agreement. EMC also indicates that it "will stipulate to bring its conversion claims in Virginia if Byron Howells will consent to jurisdiction in that forum."[2]

## II. DISCUSSION

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)."[3] Mandatory forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."[4] The burden is on Defendants to make a strong showing that the forum selection clause should be set aside.[5]

Defendants make the following arguments: (1) Plaintiff EMC waived its rights under the forum selection clause by suing Defendants for conversion in Utah; (2) enforcing the forum selection clause would violate the public policy of litigating all related claims in one action; and (3) enforcement of the forum selection clause would be unreasonable because EMC has already initiated the conversion action with this court.

A. WAIVER

Defendants first argue that "EMC made the decision to file its suit in a forum that was not authorized under the forum selection clause," and that, "[doing] so, EMC waived its right to have this action adjudicated in Virginia and the case should proceed in Utah."[6] EMC contends that its

---

[2] Docket No. 21, at 10.

[3] *K&V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 497 (10th Cir. 2002) (quoting *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992)).

[4] *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992).

[5] *M/S Bremen, GmBH v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

[6] Docket No. 16, at 8.

3

conversion claim "arises from a computer error five months after the termination of the Parties' Agreement" and is distinguishable from cases that Defendants cite to support their assertion that Plaintiff waived its rights under the forum selection clause.[7]

"Because this is a case arising under diversity jurisdiction, we must evaluate the evidence in terms of the substantive law of the forum state," in this case, Utah.[8] Under Utah law, "[w]aiver is an intensely fact dependent question, requiring a trial court to determine whether a party has intentionally relinquished a known right, benefit, or advantage."[9] To find that a waiver occurred "a fact finder need only determine whether the totality of the circumstances warrants the inference of relinquishment."[10] Further, "any waiver 'must be distinctly made, although it may be express or implied.'"[11]

EMC does not dispute that it was aware of its rights under the forum selection clause when it filed suit in this Court. Indeed, EMC argues that it brought suit in this Court not because it was unaware of its rights under the Agreement, but rather because its "claim that Defendants converted funds is not based upon nor does it arise from the Agreement."[12] Thus, EMC contends

---

[7] Docket No. 21, at 4.

[8] *Therrien v. Target Corp.*, 617 F.3d 1242, 1249 (10th Cir. 2010) (citing *Bankers Trust Co. v. Lee Keeling & Assocs., Inc.*, 20 F.3d 1092, 1099 (10th Cir. 1994)).

[9] *IHC Health Services, Inc. v. D & K Mgmt., Inc.*, 73 P.3d 320, 323 (Utah 2003).

[10] *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 942 (Utah 1993).

[11] *Id.* at 940 (quoting *Phoenix, Ins. v. Heath*, 61 P.2d 308, 311 (1936)).

[12] Docket No. 15, at 3.

that "the terms of the Agreement did not come into play and it was necessary for EMC to file its claim in Utah for the Court to have jurisdiction over the Defendants."[13]

To determine whether EMC's action in filing a claim for conversion against Defendants in this Court waived its rights under the Agreement, this Court must first establish whether EMC's conversion claims are subject to the Agreement.

The Agreement provides that it shall be construed and enforced in accordance with and governed by the laws of the Commonwealth of Virginia. Accordingly, the Court will use the law of the Commonwealth of Virginia to determine whether EMC's conversion action is subject to the forum selection clause.[14] The question of whether a tort action, such as conversion, is subject to a forum selection clause in an agreement has been addressed by the Supreme Court of Virginia in *Paul Business Systems, Inc., v. Canon U.S.A., Inc*.[15] In *Paul*, the court held that "tort claims are covered by the 'hereunder' language of . . . agreements," where "an examination of the allegations demonstrate that [the] action flows directly from the . . . agreements."[16] Further, on the facts of *Paul*, the Virginia Supreme Court enforced the forum selection clause because they found that the allegations demonstrated that the dispute arose from the business relationship, which found its basis in the agreements.[17]

---

[13] *Id.*

[14] *Yavuz v. 61 MM, Ltd*., 465 F.3d 418, 427-28 (10th Cir. 2004).

[15] 397 S.E. 2d 804 (Va. 1990).

[16] *Id.* at 808.

[17] *Id.*

In the present action, the Agreement indicates that "[t]he parties specifically agree that no other courts shall have jurisdiction over any matter arising *hereunder*."[18] In spite of this language, EMC argues that its conversion claims do not arise under the Agreement because the Agreement was terminated on October 18, 2009, and the three checks that are the subject of EMC's conversion claim were sent during the months of March and April of 2010. EMC asserts that, because the depositing of the checks occurred after the termination of the Agreement, the actions of Defendants were not within the scope of the Agreement and were not subject to the forum selection clause.

As Defendants point out, this assertion "completely ignores the very basis of [EMC's] 'conversion' claim,"[19] because "there was often a considerable lag time between when a sale occurred in Riter's Territory and when it would be paid the commission due under the Agreement," and it was not unusual for Defendants to receive commission payments from EMC after the Agreement was terminated.[20] Indeed, EMC acknowledges that the final commission under the Agreement was paid to Defendant Riter in January of 2010, three months after the termination of the Agreement.[21] Defendants claim that they consider the three checks at issue to be payments to which they are entitled under the Agreement.[22] EMC disputes whether Defendants are entitled to the funds and argues that it provided an accounting to Defendants demonstrating that they were not entitled to the funds under the Agreement.

---

[18] *Id.* (emphasis added).

[19] Docket No. 16, at 6.

[20] *Id.* at 6-7.

[21] Docket No. 21, at 3.

[22] Docket No. 16, at 7.

Because the evidence indicates that Defendants received valid payment after the termination of the Agreement and the parties engaged in an accounting to determine the validity of the payments, the Court finds that the allegations in this case support the assertion that the dispute arises from the business relationship and involves the Agreement. For this reason, the Court finds that EMC's conversion claims were subject to the Agreement.

Since EMC's conversion claims are subject to the Agreement, it remains to be determined whether, under the totality of the circumstances, EMC impliedly waived its rights under the Agreement by filing this action.

Both EMC and Defendants cite case law to support their arguments as to whether filing a conversion claim acts as a waiver of rights under a forum selection clause. EMC cites to *Diesel Props S.R.L. v. Greystone Business Credit II, LLC.,* in support of its assertion that filing a claim for conversion does not act as a waiver to rights under a forum selection clause.[23] EMC's reliance on *Diesel*, however, is mistaken in that the conversion claim in that case did not arise under the controlling agreement.[24] Moreover, the conversion claim in *Diesel* was brought in response to a perceived emergency and was settled out of court resulting in a dismissal of the claim.[25] This is in contrast to this case, where the conversion claim arises under the Agreement and will continue to be litigated with contractual claims.

---

[23] 2009 WL 89115, at *1 (S.D.N.Y. Jan 14, 2009).

[24] *Id.* (finding that the conversion claim did not constitute a waiver of the forum selection clause because it was brought in response to a perceived emergency and because "the conversion claim . . . does not arise under the Distribution Agreement").

[25] *See Id.* at *1-2.

The facts of this case bear more similarities to *Building Construction Enterprises, Inc. v. Gary Meadows Construction Co., Inc.,* relied upon by Defendants.[26] In *Building*, the court found that a plaintiff had waived its rights under a forum selection clause by instituting a breach of contract action in a different forum than that required under the forum selection clause.[27] The court held "that Plaintiff waived its right to have the action adjudicated in Jackson County, Missouri by electing to file its Complaint in this Court."[28] In this case, EMC could have brought its conversion claim against Defendant Riter in the Commonwealth of Virginia, as required under the forum selection clause. Instead, like the plaintiff in *Building*, EMC chose to bring its claim in a separate forum and only sought to enforce the clause after counterclaims were brought against it under the Agreement.[29]

For the foregoing reasons, the Court finds that (1) the conversion claim filed by EMC is subject to the Agreement and forum selection clause; and, that, (2) under the totality of the circumstances EMC impliedly waived its rights under the forum selection clause by filing its claim in this forum.

B.    PUBLIC POLICY

In addition, Defendants argue that enforcing the forum selection clause would violate the public policy of litigating all related claims in one action. EMC concedes that courts recognize a

---

[26] *See* Docket No. 16, at 6 (citing *Bldg. Constr. Enters., Inc. v. Gary Meadows Constr. Co., Inc.*, 2007 WL 1041003 (E.D. Ark. Apr. 4, 2007).

[27] 2007 WL 1041003.

[28] *Id.* at *4.

[29] *Id.* at *1 (defendant filed a counterclaim for unpaid invoices in response to plaintiffs breach of contract claim; plaintiff referred defendant to recover from third-party bonding company and bonding company sought to enforce the forum selection clause through plaintiff).

8

strong public policy favoring litigating all related claims in one action but contends that Defendants fall short of showing that their counterclaims are intricately related with EMC's conversion claim and also argues that "Riter is not correct in asserting that if its counterclaims are dismissed in Utah, the result would be two nearly identical actions pending in different courts."[30]

Courts have expressed a strong public policy of litigating all related claims in one action. The Utah Supreme Court in *Prows v. Pinpoint Retail Systems* held that, "[r]equiring a bifurcated trial on the same issues contravenes the 'objective of modern procedure,' which is to 'litigate all claims in one action if that is possible.'"[31]

EMC does not make any argument to support their assertion that Defendants counterclaims are not intricately related to their claims for conversion and the Court finds that the claims are interrelated because they all arise under the Agreement. Further, Defendants correctly argue that if their counterclaims are dismissed they will be required to pursue their claims in the courts of Virginia, resulting in two nearly identical actions in two different courts.

EMC asserts that such will not be the result, because "EMC will stipulate to bring its conversion claim in Virginia if Byron Howells consents to jurisdiction in that forum."[32] This statement highlights why dismissal would violate the public policy of litigating all related claims in one action. In *Dyersburg*, relied upon by the Utah Supreme Court in deciding *Prows*, the court refused to enforce a forum selection clause because of the likelihood that the chosen forum

---

[30] Docket No. 21, at 10.

[31] 868 P.2d 809, 813 (citing *Dyersburg Machine Works, Inc. v. Rentenback Eng'g Co.*, 650 S.W.2d 378, 380-81 (Tenn. 1983)).

[32] Docket No. 21, at 10.

9

had jurisdiction over only two of three defendants.[33] The court reasoned that the "plaintiff should be permitted to bring his action in a jurisdiction in which he can litigate all of his claims at once" and held that "[t]he objective of modern procedure is to litigate all claims in one action if that is possible."[34] In this case, the state and federal courts in Virginia will only have jurisdiction over Defendant Riter and not Defendant Byron Howells, as he is not a signatory to the Agreement. Further, Defendants have made clear that Byron Howells will not consent to jurisdiction in Virginia. Accordingly, similar to *Dyersburg*, EMC should be permitted to bring its action in a jurisdiction in which it can litigate all its claims at once.

Because the transfer or dismissal of Defendants counterclaims would result in two nearly identical trials in separate courts and would violate the public policy of litigating all related claims in one action, the Court declines to enforce the forum selection clause in this case.

C.   REASONABLENESS

Because the Court finds that EMC has waived its right to enforce the forum selection clause, and that to require Defendants to pursue their counterclaims in a separate court would violate the public policy of litigating all related claims in one action, the Court need not address Defendants reasonableness arguments.

## IV. CONCLUSION

It is therefore

ORDERED that Plaintiff/Counterclaim Defendant EMC's Motion to Dismiss for Improper Venue (Docket No. 14) is DENIED.

---

[33] *See Dyersburg*, 650 S.W.2d at 380-81.

[34] *Id*.

Dated May 25, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge